The United States has enough trouble prosecuting guilty people. We don't need to spend government resources to prosecute innocent people. That was just the first of three really troubling comments that the prosecutor made during its rebuttal closing argument that vouched for the government's case and the credibility of the cooperating witness. And it came after a case that the district court itself remarked relied heavily on the testimony of that cooperating witness. And what's more, with the juries infected by that vouching, the district court eventually instructed on the wrong offense. Was there an objection to that language? It was interesting with the vouching. Apparently there were some objections made and some not. So we're looking for both harmless and plain error. So can you tell me which ones, what the standard is for each of the statements that you're challenging? Sure, Your Honor. So the first comment, the one that I just quoted, that we don't have the resources to prosecute innocent people, was not objected to. So that's reviewed for plain error. Plain error. And is there a case on point where there's something similar that was said? What I can say is this. I couldn't find a case that had any comment quite as textbook vouching as that. I mean, I think the perhaps Kerr, I think when you read the cases, what I've really tried to do is draw on the general principles, which are, you know, the government can't say, give a guarantee of the case, of the strength of its evidence or the fact that the defendant is guilty. They can't give their personal opinion on the strength of the government's case or the credibility of the witness. The court has said that. Sorry. We have a couple of cases. One of the things he said was, I submit to you that Bill came across as extremely credible today, which was objected to. So we're reviewing for harmless error. But we have a couple of cases which say that I submit isn't vouching because it's an important flag alerting the jurors that counsel was not stating a fact but asking them to use their common sense. So our case law in vouching is actually not quite that straightforward. I mean, we do make distinctions between what the wording is using. That's why I'm asking for the plain error, where we're looking for plain error. What is the closest language on point? Again, I don't have a case that says this exact language. I think what I can say is this. If you look through the cases, even the case that you were just talking about, Nekocea. Kujayan. Yeah. So there's a lot of cases that talk about I submit. If you look at those cases, I don't think they really come down to I submit being a free license to say whatever you want. I think what the court is doing in those cases is saying, if you look at the comment, it is reflective of a prosecutor trying to draw reasonable inferences from the evidence. That's not what happened here. If you look at that one, which was objected to, certainly... That one does seem to fit that because I submit to you that he came across as extremely credible. That's asking them to think about what they saw. How did he come across? And certainly, when the credibility of the witness is attacked, then the government on rebuttal has to be able to argue to the jury why they should not accept the attack on the credibility based on what they saw and how he came across. So I'm not sure I see how the one that was objected to is even error. Well, I disagree with the characterization of the comment. So I do think that the prosecutor, when he said this, was saying, I think he came across as extremely credible. He used the word I submit. I think the best... Does that draw on any kind of extrinsic knowledge the way that the government doesn't waste his time prosecuting guilty people does? That basically says, don't worry, we've sort of screened people before we bring them in. That kind of seems core vouching, but this one doesn't seem to. The credibility was attacked. The prosecutor has to be able to get up and tell the jury why he or she thinks that they shouldn't draw that inference. Two responses to that. One, I think dividing and conquering here is a problem. I think you have to view the comment in light of the comment that came first, which is before this case even came to court, we already, as the investigators, the prosecutor, as the government, determined that this person was guilty. So that's what the jury is hearing, that they've already done this vetting out of court without even seeing the evidence that was brought to trial and decided he's guilty. The second piece that you can look at is what the prosecutor said, what his response to the objection was. So before the defense counsel objection says vouching personal opinion, before the judge can even speak in front of the jury, the prosecutor says, but he vouched for an hour. And doesn't say, no, I'm just drawing a reasonable inference, I'm just asking the jury to look at the facts. He says, he vouched for an hour. And I think it reads pretty clearly throughout the transcript of the rebuttal closing. I think he starts off and says, I just listened to defense counsel call the cooperator a liar for an hour. He seemed frustrated at the fact that defense counsel attacked the credibility of the cooperating witness. I don't know why that's frustrating. It seems like kind of the core responsibility of a defense attorney in this kind of case. But for whatever reason, the prosecutor's remedy here was not to say, hey, just look at the evidence. Stick to the evidence in the case. What defense counsel said, if they expressed any opinion, that's not evidence. Just look at the evidence. Instead, for whatever reason, really went beyond that. Counsel, if I might, you started with vouching and not with constructive amendment. I wonder if that means that you don't think constructive amendment is your strongest argument, but I actually think it could be. Would you address that and also address plain error of view? A concern I have about ruling in your favor on this is that a defendant could sit back and sandbag and see these errors, wait for the verdict, and then decide to raise it on I think it's a strong argument, too. I didn't mean to suggest that it wasn't. I'll just skip to plain error since that's your question. I think what the court has to do on plain error review, and it's a little bit muddled, I'll admit, with steps three and four, but I think I have to show you that the jury actually, or I shouldn't say actually, but there was a reasonable probability that the jury convicted on this alternate theory. And then at step four, you're asking, well, had they been instructed properly, would they necessarily have been convicted on the correct theory? And could you start by saying what the elements are of both of those? Because I was having trouble seeing the distinction. Sure. Well, I think you have to start with the distinction between distribution and possession with intent to distribute. I believe it was in Minkoff, the court's adopted- They're both conspiracies, right? They're both in challenge for conspiracy? They're both conspiracies. So it's an agreement to do something. In one case, it's an agreement to distribute. In the next, it's an agreement to possess with intent to distribute. So how are those different? Well, in terms of the elements, with a conspiracy to possess with intent to distribute, there has to be an agreement, a conspiratorial agreement with regard to possession, and then a concurrent intent to distribute. I don't think it requires a plan, the kind of plan agreement that would create a conspiracy to distribute. Certainly the court has held- So the conspiracy to distribute is an agreement to distribute? Yes. And the- So isn't that harder? Isn't that harder to prove than an agreement to possess and that there's intent? Well, I think it's different to prove. The court has held that, this court has held that distribution does not require proof of possession. But there has to be an intent to distribute, right? There has to be more than just an intent. I think there has to be an agreement on the distribution. I mean, here's where I think your Rule 29 argument actually has a sort of negative synergy, because I think you're right that there wasn't proof of intent, you know, on his part to participate in the- on Bell's part to participate in the actual further distribution. But there was evidence that he intended to possess the package that he was safeguarding, understanding that it would be distributed, and so he possessed it with the intent that it would be distributed, even though he wasn't going to participate in the distribution. But that suggests that this mistake was harmless because there really wasn't any proof that he was going to be involved in the later distribution. I think described the way that you just described it, I think I would win on the sufficiency argument because I think what you've described is a conspiracy to possess, but not a conspiracy to possess with the intent to distribute. No, because then couriers would not be able to be convicted of possession with intent to distribute or conspiracy to possess with intent to distribute, because the courier who just is the person who brings it over the border from one person to the other, knowing that it's going to be, you know, then sent down the chain, can be convicted of possession with intent to distribute and conspiracy of- to possess with intent to distribute, even though he knows he has no idea who's going to be involved in the further distribution once he relays it. That's why I had trouble with the Rule 29. It seemed that it was inconsistent with the whole courier attack pattern. Well, I don't want to get lost in the Rule 29 and forget about the constructive amendment, but I think the point is that the courier has an interest in the distribution, the further distribution by the, say, the drug trafficking organization, right? So the drugs don't get across and get delivered to the next person. First of all, they're probably guilty of a substantive offense of delivering, distributing the drugs, but they have an interest. They're getting paid to be part of that conspiracy, part of the distribution from the drug trafficking organization to further downstream buyers. But he agreed, it may have been spontaneous, but he agreed to go pick up this package, go to the other house, stand outside, he didn't break inside, and sign for it, and then bring it, take something out, and he clearly did this with the understanding and intent, or a jury could infer, that he was going to give it, then, to Berno, who would then further distribute it after he took his share out of it. Why isn't that possession with intent to distribute in conspiracy, agreement to possess with intent to distribute? Well, it's the buyer-seller rule. It's his only interest— But that's not buyer-seller, because you're right that, you know, the money he gave him to go to L.A. to purchase stuff, that's not the package that shows up. You know, you're right that that's not the package, the delivery of what he gave him the money for. It's another package that had been late, and then he asks him to pick it up. Why couldn't the jury convict on that package and find that it was unrelated to the money that he gave? Well, if they could, and if they did, then I think that takes us back to the vouching, because all of that depends on crediting Bell. So we can—certainly, you know, I understand the difficulties in the sufficiency argument, but that theory defends on the cooperator filling in way more than what was said in the text messages. I mean, they're suspicious, but you need his testimony in order to convict on the theory that you're talking about. And whether we're talking about a pre-agreed, you know, conspiracy or something that arose just when he decided to pick up the box, either way, you need his testimony. And so if the jury convicted on that theory, believing the cooperator, I think that you can't find that there was no prejudice in the vouching. If you look at it and say, well, you know what, there were problems with that. Maybe they were looking towards some other conspiracy with the California sellers. That's in the constructive amendment context. That's the problem. That's the out for the jury to say, you know what, this possession with intent to distribute, we're not sure about it. And in fact, they sent a note saying, does it have to be together with Billy Bob Bell? Did jury make a determination in its verdict as to amount? They did. They did. Okay. They did. It was—there was a special verdict. Did you want to save some time? Sure, I will. Thanks.  Good morning. May it please the court, Stephen Corso of the United States. We're here this morning to ask the court to affirm Mr. Berno's conviction despite the single instance of a vouching that occurred in this case. Do you agree that that was clearly an improper vouching? Yes, we do, Your Honor. Okay. I mean, does your office do—I mean, the vouching's a tricky area. Does your office do training of assistants so that they know where the line is? Because sometimes it gets to be close to the line. But this one blew so past the line that it's inexcusable to see a comment like that made by an AUSA. And I hope not to see a comment like that ever again. We agree, and we apologize. We're sorry that this comment was introduced into Mr. Berno's training and the Department as a whole does do training. And in fact, I'm giving a presentation in January on the topic of vouching to address this situation and others similar to it. But in examining the vouching, it's important to look at the entire rebuttal closing in account for what happened before that. Of course, the defendant in his closing attacked Mr. Bell's credibility quite fiercely, as well as in cross-examination. So clearly, the cooperation of Mr. Bell, the notion that he was lying to the jury in order to reap a benefit, the benefit being a sentence that the government would recommend that was well below the 10-year mandatory minimum. So clearly, the credibility was an issue. Clearly, it was an issue in Mr. Berno's closing argument. And the prosecutor, in his rebuttal closing, began with saying to the jury, Mr. Bell testified in front of you today. You have an opportunity to judge his credibility. So right off the bat, the prosecutor pointed the jury to Mr. Bell and his testimony. And the jury had been instructed about credibility, how to weigh credibility, and that credibility was its that the comments and arguments of counsel are not evidence, and that any comment or argument from counsel that doesn't rely on the facts and the law in the case is to be disregarded. So that's the framework that we start with. The prosecutor says, Mr. Bell was only here to tell the truth today, and he had testified that morning, and so closing occurred that afternoon that followed. And the prosecutor says, Mr. Bell doesn't get any benefits if he's not telling the truth. And that's a fair summation of the cooperation agreement that had been put into evidence. But he kept out the cooperation agreement and the provision that he then referenced to without any factual basis. Well, it's true that the prosecutor objected to the introduction of the actual paper, the actual cooperation agreement as it was written. However, during the cross-examination of Bell by the defense lawyer, he went into the cooperation agreement, and Mr. Bell testified that he, in fact, was in line to get a benefit. And during this closing argument, Mr. Berno argued that he referenced the cooperation agreement and said that Mr. Bell was clearly lying in order to get a benefit. So it's clearly in evidence, even though the actual paper is not in evidence, even though the actual paragraphs and sentences and so forth is not in evidence. So I don't think there's any issue that the cooperation agreement is in evidence. In fact, the defense lawyer referenced the cooperation agreement in its closing. So that one was put in rebuttal in getting to the government. We don't need to spend government resources to prosecute innocent people. And I appreciate you're falling on your sword, but is there a case on point? I haven't seen a case that was specifically on point. We have not either, and we've looked. So we have to analogize. And what's the closest analogy? In our view, the case is, it's slipped my mind for the moment, but... I mean, there are cases saying, I have someone in the back row who's monitoring the truthfulness of the witness. That's not a statement. So what's the case that's closest on point? Brooks, it came to my mind. Brooks, we think, is the closest case. And in Brooks, the prosecutor is referred to the witness as having testified in prior hearings, and the government agents and prosecutors had deemed the testimony credible. Also, the prosecutor referenced the procedures in obtaining search warrants and obtaining Title III, and essentially communicated to the jury that the judges had weighed in on the credibility of the witness. So here, there was an indictment made against this person or a complaint, which says, we think he's guilty. So why is this statement different than the fact that they brought an indictment claiming that he was guilty of some offenses? We think this is serious vouching. We just don't quite see it as serious as the vouching that occurred in Brooks. I appreciate it. I had some questions about not being a former federal prosecutor myself. It didn't seem to line up with what we've said. In our cases, it is clearly improper vouching for purposes of plain error. But I was interested in finding out why the government thought it was. That's our view. And it's in combination, too. The jury had been given instructions that pointed its analysis and pointed its examination back to the witness and back to Bell's credibility. And also, another factor that we're here to consider is the strength of the case. And we submit to you today that the case is strong. And I had actually more problem with that. What is the agreement in this case to possess with intent to distribute? The agreement is inferred from the circumstances of the case. So just inferring, who agreed with whom to do what? The agreement is to... So Bell agreed with Berno, or Berno agreed with somebody else? Or what is the agreement here? You raise an important point. The focus of the case, the focus of both the prosecutor and the defense lawyer at trial, was on the relationship between Bell and Berno, not between Berno and his suppliers in California. So we know that Bell gave Berno $5,500 for a pound of meth. And so Berno knew Bell was for personal use. But where is the evidence that there was a agreement to distribute, or an agreement to possess with intent to distribute? Berno and Bell had a 20-year friendship, a 20-year relationship. Okay, so they had friendship, they had trust. That's what you said in the brief. That's not an intent to distribute. That just means, I'll let you pick up my eight pounds of meth. What's the intent to distribute? Or why isn't it just a seller that Bell purchased $5,500 worth of meth and he could do what he wanted with it? I think under Moe, we look at the whole situation holistically, in the totality of the circumstances. And if we break this thing down into just small pieces, we lose sight of the entire relationship and the entire course of conduct and course of dealings. Did they have a history of distributing together? Because it wasn't in the briefing. They had a history of being in drug deals together. There was that one sentence where they said, one last deal, is that what you're relying on for the history? It's part of it. Was there other evidence? Testimony that they had done prior drug deals together. Is that? Berno asks Bell to join him in, and this is important too, to invest in one last drug deal. And I think the word invest is significant here. It suggests something more than just a pure buyer, a pure seller relationship. And what was the other testimony? They had done drug deals in the past. So Bell testified they had done drug deals in the past? It seems to me that the case really comes down to the serendipitous package that shows up. That's the only one that could conceivably support the charge, because giving him $5,500 to go to L.A. to buy drugs is a buyer-seller. And so the only thing that isn't buyer-seller is that he agrees to go fetch the package that's showing up and then to take something out of it and then pass it on to him, knowing that it's going to go on to others. He becomes an impromptu courier. We recognize the point the court is making, but we respectfully disagree. We don't think any of this is buyer-seller. We think this is all two drug dealers agreeing to procure drugs in California. If he sends him to L.A., here's the money, go get these drugs and then give them to me, that is not a buyer-seller relationship? There are other facts here. Mr. Berno was clearly a drug trafficker. In this case, there's evidence that he had a package dated October 21st that was very similar to the package that Mr. Bell retrieved. I mean, is that the only evidence of him being a drug trafficker, is the prior package that was similar in his... Well, there's kind of three pieces. There's the prior October 21st package. There's the October 31st package that was delivered and that Mr. Bell retrieved. Excuse me, yeah, Mr. Bell retrieved at Mr. Berno's instruction and request. And then during his cross-examination, Mr. Bell testified about the intention related to this $5,500 and the $5,500 that Bell had given Berno to go to California to procure a methamphetamine and then mail that methamphetamine back to Alaska. So he purchased it, like, on Amazon. Here's my $5,500 and give me the methamphetamine. I don't think he purchased it on Amazon. But isn't that what we do? We send in an order to Amazon, we give them our credit card, and they bill us and then they mail it back to us? But we don't consult our 20-year friends who we know are drug traffickers and who are drug trafficking. I've been friends with Amazon for at least 10 years. I mean, does that mean Amazon knows I'm distributing the toothpaste or whatever? Has Amazon invited you to invest in one last drug deal, to join it in a common enterprise of distributing large quantities of methamphetamine? But now you're, I think you're undermining your argument because now the jury should have been told all these factors. Because the way it looked to me, this was clearly buyer-seller and so the only way the evidence was sufficient was on the impromptu package. But if we're really going to get into this and the reason why it's not buyer-seller is because of all these other factors, it seems prejudicial error that they weren't given those factors in order to assess them. And they were clearly struggling with this very issue by their note. Well, again, we recognize the point the court's making, but we again respectfully disagree. All of the intention that Mr. Bell had in the third package, the one that was to come after October 31st, all that intention was transferred into the October 31st package that he retrieved from Burnham's house. And he took measures after he picked up the package to evade law enforcement. He signed with a false name and his full intention was to take a little bit out of that package to use and then distribute the rest of it. He testified that his intention was to distribute drugs from that package to the community in So his intention there is quite clear and the question then becomes, was Mr. Burnham, did he agree with that? Did he intend for Mr. Bell to distribute those drugs from that package? And based on the totality of the circumstances and looking at this holistically, he quite clearly did. Mr. Burnham was quite clearly a drug trafficker and so is Mr. Bell. And the notion that somehow Mr. Burnham didn't know that Bell would resell or redistribute his pound of methamphetamine, we think is unreasonable. Is it enough to know that? I mean, if you sell someone eight pounds of meth, say, I know that's not the facts here, you know they're not using it themselves, but even knowing that, does that mean that you're in a conspiracy with that person to distribute? It's a start and I think it's a strong start for the government. Then you look at these other factors like the relationship and their coordination. Here there's coordination. Mr. Burnham is in Los Angeles and he is tracking the progress of this package and he sees on his phone that it's out for delivery that day and who does he call to go get it? He calls Burnham. He calls Bell, I'm sorry. His old friend. His old friend. Right. Yeah. That suggests there, right there, that Mr. Bell is a drug trafficker and that Mr. Burnham knows it. Counsel, what do we make, though, of these instructions that are inconsistent in terms of the offense that's charged? Yes. It's on plein air review. We don't think that there was any plein air. Clearly, a couple times the district court misspoke and did mention that one of the charges was conspiracy to distribute methamphetamine. That's clearly inaccurate. The indictment clearly is conspiracy to possess with intent to distribute. But you have to look at these- Also sometimes referred to controlled substances generally, not the specific drug. Right. But quite often in the instructions, the judge came right back and correctly instructed the jury that the charge was possession with intent to distribute. The indictment is possession with intent to distribute. The jury was there to decide the guilt or innocence based on the indictment. The verdict form was possession with intent to distribute. And kind of a final point, logically, any- Well, first, in a conspiracy, you don't have to commit the acts or the objects. So it's just an agreement to commit those acts. So it's an agreement to possess with intent to distribute or an agreement to distribute. And because it falls under conspiracy, any distinction between distribution and possession with intent to distribute fades away. Any conspirator who's involved in a conspiracy to possess with intent to distribute is automatically agreeing to distribute those drugs. That's the whole point of the conspiracy to possess in the first place, is to distribute. Well, that someone will distribute them. Yes. And if someone distributes them, then arguably all the conspirators are liable for that act. But the intention is to possess the drugs so that they are distributed. So it's a conspiracy to distribute those drugs as well. And any conspirator in a conspiracy to distribute drugs is also in a conspiracy to possess with intent to distribute the drugs. Because no one can distribute the drugs until they're possessed. And with that, I can see that my time is up and I appreciate the court's time and attention. Thank you. Thank you. Mr. Marks, you have a few more minutes. Thanks. I'll try to be quick. I got one quick point on each of the different subjects. At ER 339, Bell testified on cross-examination, before Friday, Peter discussed doing one last deal and he discussed putting me in, fully vesting on it. And I declined. So there was no agreement to go in on one last deal. And I think clearly when you read that, my reading of it, and you can read it, is that he was saying one last deal for myself. I'm trying to do one last deal and then be out of the business. And that's how Bell understood it. So that was not, there was no evidence in my review, I didn't hear a cite from the government, that there was a repeated drug transactions between these two men. So Bell testified, opposing counsel says, Bell testified that he had done drug deals in the past with Burno beyond that statement about one last drug deal. But you're saying that there isn't testimony to that effect? I think that's incorrect. Sometimes it's difficult to prove a negative, but you have to read the whole transcript. I did not see that testimony. If the government had cited something, I could respond to it, but I just didn't see it. The comment in the rebuttal argument was not, he doesn't get any benefit of the deal if he's not telling the truth. The comment was, he doesn't get any benefit from the deal if he's not honest with the United States. Not that he testifies truthfully. That's helpful. Yeah. Well. But that, but that actually sort of, you know, sort of made the, gave the comment a different complexion because he said, you know, if he's not honest and helpful to the government, which, which sort of ties in with the defense's point that he only was going to get a benefit if he said what the government wanted, which was the attack on his credibility. And then the comment that was made actually sort of reinforced that very point. So I, I'm not sure how, how prejudicial it is in the scheme of things. Well, the government's, the government is saying he, we judge if he's honest. And if he, we believe he's honest. If we get what we want out of him. Well, I mean, again, if you believe that, then I think maybe we would have done better at the trial. But I think, I think the problematic comment is honest with the United States, not honest with you. So it, even all of these cases about bringing in a truth telling clause from the plea agreement all referred to the responsibility to tell the truth at trial, because it's responding to the defense argument, this plea agreement gives the person to modify, excuse me, a motive to lie at trial. And so that's why it's a proper response. That's not what this comment was. This wasn't just commenting on facts, not on evidence, meaning a clause that wasn't included. It wasn't even talking about truthful testimony. It was, again, saying, we vetted this and we think it's, we think he's telling the truth. And that happened before trial started. So you're over time. Can you just wrap up, please? Sure. I really don't have more to say. Those were the, those were the main points that I was going to hit. So I would submit. Okay. We thank both sides for their argument. The case of the United States versus Brno is submitted on the briefs, submitted, not after oral argument. And we'll next hear.
judges: IKUTA, COLLINS, Fitzwater